**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HARLEM GLOBETROTTERS INTERNATIONAL, INC., <br><br> Plaintiff, <br> v. <br><br> SMALL BUSINESS ADMINISTRATION, and ISABELLA CASILLAS GUZMAN, <br><br> Defendants. | Civil Action No: 24-1164 (RBW) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 7(h), Plaintiff Harlem Globetrotters International, Inc. hereby provides this Opposition to Defendant's Cross Motion for Summary Judgment and Reply in Support of Plaintiff's Motion for Summary Judgment ("Reply"). In support of this Reply, Plaintiff relies on the accompanying Memorandum of Points and Authorities and the administrative record.

Respectfully submitted this 2nd day of December, 2024.

/s/ Gunjan Talati
Gunjan Talati (DC Bar No. 976169)
KILPATRICK TOWNSEND & STOCKTON LLP
701 Pennsylvania Ave, Suite 200
Washington, DC 20004
gtalati@ktslaw.com
Telephone: (202) 481-9941
*Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HARLEM GLOBETROTTERS INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> SMALL BUSINESS ADMINISTRATION, and ISABELLA CASILLAS GUZMAN, <br><br> Defendants. | Civil Action No: 24-1164 (RBW) |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS OPPOSITION TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Gunjan Talati (DC Bar No. 976169)
KILPATRICK TOWNSEND & STOCKTON LLP
701 Pennsylvania Ave, Suite 200
Washington, DC 20004
gtalati@ktslaw.com
Telephone: (202) 481-9941
*Attorney for Plaintiff*

30694609V.1 107227/1424491

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 3

    I.     Under 5 U.S.C. § 706(2), the SBA's Refusal to Disperse Funds Pursuant to a Notice of Award is Arbitrary and Capricious. ................................................................... 3

          A.     5 U.S.C. § 706(2) is Appropriate when Agency Inaction Has the Same Impact as an Express Denial. ..................................................................... 3

          B.     The "Substantial Evidence" and "Arbitrary and Capricious" Standards Are Used Interchangeably for Fact-based Determinations Under 5 U.S.C. § 706(2). ....................................................................................................... 4

          C.     The Administrative Record Does Not Contain an Explanation for SBA's (In)Actions. ............................................................................................... 6

    II.    Under 5 U.S.C. § 706(2), SBA's Interpretation of the CAA is "Arbitrary and Capricious" .................................................................................................... 9

          A.     The SBA's Interpretation and Decision to Apply the CAA is an "Agency Action." ............................................................................................... 9

          B.     Issue Preclusion Does Not Apply to Matters Dismissed for Lack of Subject Matter Jurisdiction. ..................................................................... 9

          C.     The SBA Has Provided No Explanation or Authority to Support Its Interpretation of the CAA. ................................................................... 10

    III.   Under 5 U.S.C. § 706(1), the SBA Should Be Ordered to Disperse Funds Pursuant To A Notice of Award. .................................................................... 12

    IV.   HGI is Entitled to Promissory Estoppel. ......................................................... 21

CONCLUSION ................................................................................................................. 25

30694609V.1 107227/1424491

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AARP v. United States Equal Emp. Opportunity Comm'n*, 267 F. Supp. 3d 14 (D.D.C.),
  *on reconsideration*, 292 F. Supp. 3d 238 (D.D.C. 2017)...........................................................6

*Air Canada v. Dep't of Transp.*,
  148 F.3d 1142 (D.C. Cir. 1998)......................................................................................7

*Alaska Bulk Carriers, Inc. v. Baldrige*,
  541 F. Supp. 770 (D.D.C. 1982)......................................................................................7

*All. to Save Mattaponi v. U.S. Army Corps of Eng'rs*,
  515 F. Supp. 2d 1 (D.D.C. 2007)......................................................................................3

*Anglers Conservation Network v. Pritzker*,
  809 F.3d 664 (D.C. Cir. 2016).......................................................................................13

*Appropriations, Obligation, Civil Defense Contributions to States*
  B-109173, 1952 WL 588 (Comp. Gen. May 21, 1952)...........................................................16

*Arabzada v. Donis*,
  No. CV 23-655 (RC), 2024 WL 1175802 (D.D.C. Mar. 19, 2024)...................................13, 14

*Beckman v. USPS*,
  79 F.Supp.2d 394 (S.D.N.Y.2000).................................................................................22

*Bowsher v. Synar*,
  478 U.S. 714 (1986).......................................................................................................11

*Burkhart v. WMATA*,
  112 F.3d 1207 (D.C. Cir. 1997).....................................................................................22

*Choate v. TRW, Inc.*,
  14 F.3d 74 (D.C. Cir. 1994)...........................................................................................23

*Concert Inv., LLC v. Small Bus. Admin.*,
  100 F.4th 215 (D.C. Cir. 2024)...................................................................................8, 20

*In re Core Commc'ns, Inc.*,
  531 F.3d 849 (D.C. Cir. 2008)........................................................................................20

*Dep't of Com. v. New York*,
  139 S. Ct. 2551 (2019)...................................................................................................11

*Dickinson v. Zurko*,
527 U.S. 150 (1999)........................................................................................................5

*Donovan v. USPS*,
530 F.Supp. 872 (D.D.C. 1981)....................................................................................22

*Encino Motorcars, LLC v. Navarro*,
579 U.S. 211 (2016)......................................................................................................11

*Filebark v. U.S. Dep't of Transp.*,
468 F.Supp.2d 3 (D.D.C. 2006)....................................................................................10

*Golden Ent. PA, Inc. v. SBA*,
Civ. A. No. 22-1731 (JDB), 2024 WL 1344421 (D.D.C. Mar. 29, 2024)...............14

*Harlem Globetrotters Int'l, Inc. v. United States*,
168 Fed. Cl. 31 (2023)................................................................................10, 23, 24

*Harlem Globetrotters Int'l, Inc. v. United States*,
No. 1:23-cv-00386-RAH (Fed. Cl. October 4, 2023).........................................1, 12

*Heckler v. Chaney*,
470 U.S. 821 (1985).......................................................................................................3

*Hi-Tech Pharmacal Co. v. U.S. Food & Drug Admin.*,
587 F. Supp. 2d 1 (D.D.C. 2008)...................................................................................4

*Inc. v. DEA*,
259 F.3d 731 (D.C. Cir. 2001).......................................................................................7

*Jost v. Surface Transp. Bd.*,
194 F.3d 79 (D.C. Cir. 1999).......................................................................................11

*Kreis v. Sec'y of Air Force*,
406 F.3d 684 (D.C. Cir. 2005).......................................................................................8

*Loper Bright Enterprises v. Raimondo*,
144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024).........................................2, 10, 11, 15

*Maine Cmty. Health Options v. United States*,
590 U.S. 296, 140 S. Ct. 1308 (2020).......................................................................18

*Maine Lobstermen's Ass'n v. Nat'l Marine Fisheries Serv.*,
70 F.4th 582 (D.C. Cir. 2023).......................................................................................9

*Monument Realty LLC v. Washington Metro. Area Transit Auth.*,
535 F. Supp. 2d 60 (D.D.C. 2008)...............................................................................22

ii

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins.*,
  463 U.S. 29 (1983)................................................................................................12

*Nat'l Automatic Laundry & Cleaning Council v. Shultz*,
  443 F.2d 689 (D.C. Cir. 1971).............................................................................9

*Nat'l Classification Comm. v. United States*,
  765 F.2d 164 (D.C. Cir. 1985)...........................................................................21

*Norton Constr. Co. v. U.S. Army Corps of Engineers*,
  2006 WL 3526789 (N.D.Ohio Dec. 6, 2006) .....................................................3

*Obligational Practices of the Corporation for National and Community*,
  B-300480, 2003 WL 1857402 (Comp. Gen. April 9, 2003)......................16, 17, 18

*Olympic Fed. Sav. & Loan Ass'n v. Off. of Thrift Supervision*,
  Civ. A. No. 90-0482 (RCL), 1990 WL 134841(D.D.C. Sept. 6, 1990)...................21

*Op. Comp. Gen.*,
  B–193573 (Dec. 19, 1979)..................................................................................18

*Pailes v. U.S. Peace Corps*,
  783 F. Supp. 2d 1 (D.D.C. 2009) .......................................................................10

*Parnigoni v. St. Columba's Nursery Sch.*,
  681 F. Supp. 2d 1 (D.D.C. 2010) .......................................................................24

*PDK Lab'ys Inc. v. U.S. D.E.A.*,
  362 F.3d 786 (D.C. Cir. 2004).............................................................................7

*Pol'y & Rsch., LLC v. United States Dep't of Health & Hum. Servs.*,
  313 F. Supp. 3d 62 (D.D.C. 2018) .......................................................................6

*Potomac Elec. Power Co. v. ICC ("PEPCO")*,
  702 F.2d 1026 (D.C. Cir. 1983)..........................................................................20

*RadNet Mgmt v. Nat'l Lab. Rels. Bd.*,
  992 F.3d 1114 (D.C. Cir. 2021)............................................................................7

*Rochester Pure Waters Dist. v. EPA*,
  960 F.2d 180 (D.C. Cir. 1992)............................................................................14

*Roelofs v. Sec'y of Air Force*,
  628 F.2d 594 (D.C. Cir. 1980)..............................................................................7

*S. Carolina Pub. Serv. Auth. v. FERC*,
  762 F.3d 41 (D.C. Cir. 2014)................................................................................4

iii

*Scheidler v. Nat'l Org. for Women, Inc.*,
   537 U.S. 393 (2003)...............................................................................................17

*SEC v. Chenery Corp.*,
   318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943)......................................................9

*Select Specialty Hosp.–Bloomington, Inc. v. Burwell*,
   757 F.3d 308 (D.C. Cir. 2014).................................................................................5

*Sierra Club v. Thomas*,
   828 F.2d 783 (D.C. Cir. 1987).................................................................................3

*Sokol World Ent., Inc. v. Small Bus. Admin.*,
   No. 21-CV-2385 (TSC), 2022 WL 4547540 (D.D.C. 2022) ....................................8

*Stebbins v. Keystone Ins. Co.*,
   481 F.2d 501 (D.C. Cir. 1973)...............................................................................10

*Stewart v. Geostar Corp.*,
   617 F.Supp.2d 532 (E.D. Mich. 2007)....................................................................10

*U.S. Department of Education's Use of Fiscal Year Appropriations to Award*
   *Multiple Year Grants*,
   B-28980, 2002 WL 31950147(Comp. Gen. Dec. 30, 2002).....................................16

*In re U.S. Office Products Co. Sec. Litig.*,
   251 F. Supp. 2d 77 (D.D.C. 2003)..........................................................................22

*United States Olympic & Paralympic Museum v. Small Bus. Admin.*,
   No. 22-CV-3785 (TSC), 2024 WL 3694462 (D.D.C. Aug. 7, 2024) .............................. *passim*

*Vallejo Ent. LLC v. Small Bus. Admin.*,
   No. 1:22-CV-01548-RCL, 2023 WL 3275634 (D.D.C. May 5, 2023)..............................20, 21

*W. Sur. Co. v. U.S. Eng'g Co.*,
   375 F. Supp. 3d 1 (D.D.C. 2019).............................................................................15

*Washington Props., Inc. v. Chin, Inc.*,
   760 A.2d 546 (D.C. 2000) .......................................................................................15

*Wilbur v. U.S. ex rel. Kadrie*,
   281 U.S. 206, 50 S. Ct. 320, 74 L. Ed. 809 (1930)..................................................19

*Window Covering Manufacturers Ass'n v. Consumer Prod. Safety Comm'n*,
   82 F.4th 1273 (D.C. Cir. 2023).................................................................................4

*Wis. Gas Co. v. FERC*,
   770 F.2d 1144 (D.C. Cir. 1985)................................................................................5

30694609V.1 107227/1424491

**Statutes**

5 U.S.C. § 551(13) ..................................................................................................................3, 4

5 U.S.C. § 555(e) .....................................................................................................................6, 7

5 U.S.C. § 706(1) .........................................................................................................3, 12, 13, 21

5 U.S.C. § 706(2) ................................................................................................................ *passim*

15 U.S.C. § 633 ........................................................................................................................14, 19

15 U.S.C. § 9009a(b)(1)(A) ...........................................................................................................23

31 U.S.C. § 1501 ................................................................................................................ *passim*

31 U.S.C. § 1501(a) ..........................................................................................................14, 15, 16

31 U.S.C. § 1501(a)(5) ....................................................................................................9, 14, 16, 17

31 U.S.C. § 1501(a)(6) ......................................................................................................................9

31 U.S.C. § 1501(a)(9) ......................................................................................................................9

41 U.S.C. § 5 .....................................................................................................................................16

Affordable Care Act ..........................................................................................................................18

Antideficiency Act ............................................................................................................................18

Consolidated Appropriations Act of 2023 ............................................................................ *passim*

Economic Aid Act ........................................................................................................................16, 19

Federal Appropriations Law .............................................................................................11, 14, 18, 19

U.S. Code § 1501 (a)(5)(A) ...............................................................................................13, 15, 16, 17

U.S. Code § 9009a ........................................................................................................................17, 23

U.S. Code § 9009a(b)(2) ....................................................................................................................13

U.S. Code § 9009a(c) .........................................................................................................................16

**Rules & Regulations**

48 C.F.R. § 49.502 .............................................................................................................................16

48 C.F.R. § 52.243-1 ..........................................................................................................................16

48 C.F.R. § 243-2................................................................................................................16

48 C.F.R. § 243-3................................................................................................................16

86 Fed. Reg. 16,270 ...........................................................................................................23

86 Fed. Reg. at 16,274 .......................................................................................................23

Federal Rule of Civil Procedure 56 ......................................................................................1

Local Civil Rule 7(h) ...........................................................................................................1

**Other Authorities**

"Tallahassee Couple Sentenced to Federal Prison for Wire Fraud, Conspiracy,
    Money Laundering Conspiracy, and Making False Statements Relating to
    Covid-19 Relief Programs"..................................................................................................8

30694609V.1 107227/1424491

## INTRODUCTION

After more than two years of litigation in this Court and the Court of Federal Claims, this may be the last word the Harlem Globetrotters International Inc. ("HGI") gets for a while.  Even though the Small Business Administration ("SBA") will have one more filing, the records (both the Administrative Record and the litigation record) establishes these unassailable truths:

- After "screwing up" multiple times,[1] SBA awarded HGI funds from the Shuttered Venue Operators Grant Program ("SVOG") through a Notice of Award on December 7, 2022. HGI completed all necessary steps to receive funding on or before December 8, 2022.  The Administrative Record establishes HGI was eligible and that it completed all required tasks to be paid.

- There is no explanation in the records for why SBA has not paid HGI.  Instead, SBA hides behind the Consolidated Appropriations Act of 2023 ("CAA").  However, as HGI has explained, the CAA rescinded "unobligated" funds from the SVOG program effective December 29, 2022, and the funds committed to HGI were "obligated" under any reasonable interpretation of the word.

Perhaps realizing that it cannot argue the merits of the matter, the SBA resorts to the only option available to it – it attempts to find numerous technical "foot faults" in HGI's arguments.  However, this shotgun approach should not obscure from the Court one immutable fact: the Administrative Record (even incorporating all public laws) cannot provide an explanation for SBA's effective denial of the Notice of Award and refusal to pay funds to HGI.

---

[1] "We're here today because the SBA screwed up." - Judge Hartling, Transcript of Motion to Dismiss Hearing, 11:3-4, ECF No. 14, *Harlem Globetrotters Int'l, Inc. v. United States*, No. 1:23-cv-00386-RAH (Fed. Cl. October 4, 2023).

1

All of the SBA's arguments can be easily addressed: 1) the SBA's inaction in paying HGI constitutes an "agency action" under 5 U.S.C. § 706(2) because it has the same impact as an express denial; 2) the "substantial evidence" and "arbitrary and capricious" standards are used interchangeably for fact-based determinations; 3) while public acts are a part of the Administrative Record, an agency's interpretation of these acts are not; 4) the SBA granted similarly situated entities with Notices of Award and informed these entities they were in line for SVOG funding – any confusion by HGI is only further evidence that the Administrative Record (and public record) provides no information explaining SBA's refusal to pay HGI pursuant to the Notice of Award; 5) the SBA's interpretation of the CAA is an agency action; and 6) issue preclusion does not apply when the initial matter was dismissed for a lack of subject matter jurisdiction.

SBA's argument can be summed up in one sentence: "SBA [does] not need to explain its conclusion that Congress had rescinded the funds at issue because its reasoning was 'self-explanatory.'" Opposition at 25. Unfortunately for the SBA, it can no longer simply expect court deference for its self-serving interpretations of law. Post *Loper Bright,* the SBA must convince this Court of its interpretation of "obligated" funds under the CAA and it must provide a non-arbitrary and capricious reason for its effective denial of a Notice of Award. HGI has provided numerous, well litigated examples for the correct interpretation of "obligated". SBA, in contrast, has yet to provide a single authority for its interpretation of "obligated." The SBA's interpretation of the CAA, which lies in direct contrast with all other case law surrounding Appropriations Acts, is not "self-explanatory."

For the foregoing reasons, this Court should grant HGI's Motion for Summary Judgment, deny the SBA's Cross Motion for Summary Judgment, and award HGI with the $10,000,000 originally promised to it by SBA.

30694609V.1 107227/1424491

**ARGUMENT**

I.    **Under 5 U.S.C. § 706(2), the SBA's Refusal to Disperse Funds Pursuant to a Notice of Award is Arbitrary and Capricious.**

    A.  **5 U.S.C. § 706(2) is Appropriate when Agency Inaction Has the Same Impact as an Express Denial.**

The SBA argues that 5 U.S.C. § 706(1) is HGI's only avenue for relief, because 5 U.S.C. § 706(2) only applies to "agency actions" not agency "inactions". *See* Dkt. 18 ("Opposition"), at 11. This is simply incorrect.

Section 5 U.S.C. § 706(2) allows a court to "hold unlawful and set aside agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." The APA defines "agency action" as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, **or failure to act.**" 5 U.S.C. § 551(13) (emphasis added).

A plaintiff can bring an action under both 5 U.S.C. § 706(1) and § 706(2) when agency inaction – or a failure to act – has the same effect as an express denial. *All. to Save Mattaponi v. U.S. Army Corps of Eng'rs*, 515 F. Supp. 2d 1, 10 (D.D.C. 2007) ("According to the plain terms of APA, 'failures to act' fall under the scope of both § 706(1) and § 706(2) . . . The court, therefore, has subject matter jurisdiction over these claims pursuant to § 706(2).") (internal citations omitted); *see also Norton Constr. Co. v. U.S. Army Corps of Engineers*, 2006 WL 3526789 (N.D.Ohio Dec. 6, 2006) (rejecting Government's argument that agency inactions under § 706(1) and § 706(2) are mutually exclusive).

In support of its position, the SBA relies on *Heckler v. Chaney*, 470 U.S. 821 (1985) and its immediate progeny. *See* Opposition, at 11. However, since *Chaney*, this Court has repeatedly held agency inaction is actionable under that 5 U.S.C. § 706(2). *All. to Save Mattaponi,* 515 F. Supp. 2d 1, 9 (D.D.C. 2007) ("The D.C. Circuit repeatedly has read *Chaney* narrowly in cases involving agency inaction"); *Sierra Club v. Thomas*, 828 F.2d 783 (D.C. Cir. 1987) (holding that

3

"agency inaction is final action having the same impact as agency action") (partially abrogated on other grounds).

Instead, this Court has held that an agency's inaction – such as refusing to distribute funds pursuant to a valid notice of award – is effectively a denial of funds:

> The D.C. Circuit has stated that APA review of an agency's failure to act is appropriate when the challenged inaction may represent effectively final agency action that the agency has not frankly acknowledged. Judicial review of an agency's failure to act under Section 706(2) is authorized, then, when administrative inaction has the same impact on the rights of the parties as an express denial of relief.

*Hi-Tech Pharmacal Co. v. U.S. Food & Drug Admin.*, 587 F. Supp. 2d 1, 10 (D.D.C. 2008).  The SBA's unexplained decision not to fulfill the terms of the Notice of Award has the same effect as a denial of the Notice of Award.  This effective denial of funds is a "failure to act" and therefore categorized as "agency action" under 5 U.S.C. § 551(13).   *Id.*   Thus, this Court can review the SBA's "inaction" under 5 U.S.C. § 706(2).

**B.  The "Substantial Evidence" and "Arbitrary and Capricious" Standards Are Used Interchangeably for Fact-based Determinations Under 5 U.S.C. § 706(2).**

Instead of providing any kind of evidence (substantial or otherwise) or explanation for refusing to distribute funds to HGI, the SBA attempts to attack the standard itself.  SBA argues that HGI's reference to "substantial evidence" "stumbles out the gate" because the "substantial evidence" standard applies only to formal rulemakings and formal adjudications not "arbitrary and capricious" actions.  *See* Opposition, at 12.  The SBA's argument creates a distinction without a difference.

This Court has repeatedly emphasized "that the distinction between the substantial evidence and the arbitrary or capricious test is largely semantic" and that the two tests "are one and the same." *Window Covering Manufacturers Ass'n v. Consumer Prod. Safety Comm'n*, 82 F.4th 1273, 1286 n.2 (D.C. Cir. 2023) (internal citations omitted); *S. Carolina Pub. Serv. Auth. v.*

30694609V.1 107227/1424491

*FERC*, 762 F.3d 41 (D.C. Cir. 2014) (finding that the substantial evidence test is identical to the arbitrary and capricious standard.); *Wis. Gas Co. v. FERC*, 770 F.2d 1144, 1156 (D.C. Cir. 1985) (same).

Regardless, HGI has always maintained that SBA's actions are "arbitrary and capricious." Dkt. 1 Complaint ("Cmpl.") ¶¶15, 68-82; HGI's Motion For Summary Judgment, Dkt 15. ("Motion"), at 7-17. HGI's Motion referenced "substantial evidence" simply for the proposition that "factual conclusions" (such as the ineligibility for SVOG assistance or that something cannot be paid) need to be supported by "substantial evidence". Motion, at 14; *Dickinson v. Zurko*, 527 U.S. 150, 164 (1999) (discussing the history and usage of the "substantial evidence" standard and determining that "a reviewing court reviews an agency's reasoning to determine whether it is 'arbitrary' or 'capricious,' or, if bound up with a record-based factual conclusion, to determine whether it is supported by 'substantial evidence.') (internal citations omitted). The SBA's arguments and cited cases do not challenge or overrule *Dickinson*.

By drawing attention to hollow distinctions, the SBA attempts to obfuscate one material underlying fact: the Administrative Record is devoid of any evidence that HGI should not receive the SVOG funds to which it is entitled. The Opposition produces no additional document or explanation supporting SBA's position. This alone is fatal to the SBA's position as where an agency fails to adequately "state its reasoning", the agency's action is by definition arbitrary and capricious. *Select Specialty Hosp.–Bloomington, Inc. v. Burwell*, 757 F.3d 308, 312 (D.C. Cir. 2014) ("There are cases where an agency's failure to state its reasoning or to adopt an intelligible decisional standard is so glaring that we can declare with confidence that the agency action was arbitrary and capricious. This is one of them.") (internal citations omitted).

5

### C. The Administrative Record Does Not Contain an Explanation for SBA's (In)Actions.

HGI agrees that the Public Acts can be read into the Administrative Record. But a mere incorporation of publicly available documents does not replace "reasoned decision making" in the Administrative Record. *AARP v. United States Equal Emp. Opportunity Comm'n*, 267 F. Supp. 3d 14, 29 (D.D.C.), *on reconsideration*, 292 F. Supp. 3d 238 (D.D.C. 2017) ("[T]he agency's chosen interpretation must be reasonable and must be supported by the administrative record.")

In *Pol'y & Rsch., LLC,* this Court held that the Government must sufficiently explain in the Administrative Record any deviation to a validly awarded Notice of Award:

> The most striking thing about the agency action that Plaintiffs challenge in this case is the fact that HHS *provided no explanation whatsoever* for its decision to "shorten[ ]" the project periods pertaining to Plaintiffs' grants. (*See* Notice of Award 2017–2018 at 82.) The agency merely announced the change as a foregone conclusion, an *ipse dixit* if you will, and presumably expected Plaintiffs not to notice that their grants were being terminated two years early without any statement of cause or a finding that any of the other circumstances set forth in HHS's termination rules existed. In its summary judgment brief, the agency breezily contends that its "policy concerns with the current TPPP Program are a matter of public record." (Def.'s Mem. at 37.) But as far as the *administrative* record is concerned, HHS said nothing to Plaintiffs at the time that it cut short their project periods, and it certainly did not undertake the kind of reasoned analysis of potential causes that the APA and its own regulations require.

*Pol'y & Rsch., LLC v. United States Dep't of Health & Hum. Servs.*, 313 F. Supp. 3d 62, 83 (D.D.C. 2018) (emphasis in original). Here, the SBA has refused to provide an explanation in the Administrative Record for its effective denial of HGI's Notice of Award and refusal to pay HGI.

Instead of providing an explanation, SBA claims that its reasoning is "self-explanatory." Opposition at 14. This is not the first time the SBA has asserted this argument in an SVOG case. Recently, in *United States Olympic & Paralympic Museum*, the SBA asserted that a denial of SVOG funds were "self-explanatory" under 5 U.S.C. § 555(e). *United States Olympic & Paralympic Museum v. Small Bus. Admin.*, No. 22-CV-3785 (TSC), 2024 WL 3694462, at *3

6

(D.D.C. Aug. 7, 2024).  The Court in *United States Olympic & Paralympic Museum* specifically rejected this argument:

> Defendants do not even argue that their explanation was a reasoned one. Rather, they contend that the SBA did not need to give a reasoned explanation because it was "self-explanatory" that Plaintiff's "application affirmatively show[ed] on its face that the applicant is ineligible for the relief that they sought." Def.'s Am. Cross-Mot. for Summ. J. & Opp'n to Pl.'s Mots. for Summ. J. & to Consider Extra-Record Evidence, ECF No. 32 at 3–7 ("Def.'s Mot.") (citing 5 U.S.C. § 555(e)). . . But this case is far less "self-explanatory" than any of the D.C. Circuit cases Defendants cite.

*Id*.  The SBA, likely aware that the "self-explanatory" argument is doomed, cites to zero analogous cases for its proposition.  The cases that it does cite to (*RadNet Mgmt v. Nat'l Lab. Rels. Bd.*, 992 F.3d 1114, 1124 (D.C. Cir. 2021); *Air Canada v. Dep't of Transp*., 148 F.3d 1142, 1157 (D.C. Cir. 1998); *Alaska Bulk Carriers, Inc. v. Baldrige*, 541 F. Supp. 770, 773 (D.D.C. 1982)) address a completely different test – the "harmless error" rule.  These cases can be easily distinguished because clearly, SBA's erroneous refusal to distribute funds pursuant to a valid Notice of Award resulted in harm to HGI – HGI has not received $10,000,000 promised to it.  *See PDK Lab'ys Inc. v. U.S. D.E.A.*, 362 F.3d 786, 799 (D.C. Cir. 2004) (finding prejudicial error when an agency's mistake may affect the outcome of suspension orders).

Through SBA's handwaving, the fact remains that SBA must provide a detailed reasoning for effective denials of Notices of Awards.  *See Tourus Rec.s, Inc. v. DEA*, 259 F.3d 731, 737 (D.C. Cir. 2001) (Agencies are subject to the "fundamental requirement" that they "set forth [ ] reasons for [a] decision") (cleaned up).  In other words, the agency's statement must be one of reasoning, not merely conclusion.  *Roelofs v. Sec'y of Air Force*, 628 F.2d 594, 601 (D.C. Cir. 1980) ("It is not enough if Government counsel offer to explain the reasons for the denial . . .")

The SBA further claims that HGI is mistaken as to which SVOG entities have been approved and given SVOG funding – however, this is only further evidence that the public record

and Administrative Record is devoid of any information substantiating SBA's position. According to court opinions, *Sokol World Entertainment* and *Concert Investors* have successfully litigated APA claims in this Court. *Sokol World Ent., Inc. v. Small Bus. Admin.*, No. 21-CV-2385 (TSC), 2022 WL 4547540, at *1 (D.D.C. 2022) (granting Sokol's Motion for Summary Judgment to receive SVOG funding); *Concert Inv., LLC v. Small Bus. Admin.*, 100 F.4th 215 (D.C. Cir. 2024) (vacating and remanding holding that Concert Investor was ineligible for SVOG funding).

By even Ms. Richardson's accounts (the SBA's Deputy Director for the Shuttered Venue Operators Grant), some entities are at least "in line" to receive SVOG funding if, and when, funding becomes available. *See* Opposition, Exhibit A, Dkt 18-1, Richards Decl. ¶ 13 (listing out Companies A, B, and C that are "deemed eligible prior to the recission" that have yet to receive SVOG funding). Is HGI mystery "Company A" in line for $10,000,000 or is that some other company? If not, why is it not HGI? There is simply nothing in her affidavit or Administrative Record to provide any further explanation.[2] The last chronological document in the Administrative Record is the acceptance and execution of HGI's Notice of Award. Disparate treatment of similarly situated entities without justification is arbitrary and capricious. *Kreis v. Sec'y of Air Force*, 406 F.3d 684, 687 (D.C. Cir. 2005) ("It is axiomatic that an agency must treat similar cases in a similar manner unless it can provide a legitimate reason for failing to do so.") The SBA has

---

[2] This also raises a litany of practical questions that SBA has failed to address such as: Is HGI similarly "in line" to receive funding? Are funds that were earmarked for pending litigation still remaining? Why did the SBA choose to apply the not yet in effect CAA to the HGI's Notice of Award? Is there any SVOG funding remaining after DOJ prosecutions that have clawed back SVOG grants? *See e.g.* U.S. DOJ Press Release "Tallahassee Couple Sentenced to Federal Prison for Wire Fraud, Conspiracy, Money Laundering Conspiracy, and Making False Statements Relating to Covid-19 Relief Programs", available at *https://www.justice.gov/usao-ndfl/press-release/file/1582411/dl* (Individuals agreed to pay back restitution to the SBA for ill-gotten SVOG funds in the amount of $2,802,690.76). None of this information is available in the "self-explanatory" Administrative Record.

failed to provide any reasoning for its actions, thus under 5 U.S.C. § 706(2), the SBA's refusal to disperse funds to HGI is arbitrary and capricious.

## II. Under 5 U.S.C. § 706(2), SBA's Interpretation of the CAA is "Arbitrary and Capricious"

### A. The SBA's Interpretation and Decision to Apply the CAA is an "Agency Action."

The Opposition claims that the SBA's interpretation and application of the CAA is not an "agency action." This position is without merit. Case law is clear that an agency's interpretation of law is an "agency action." *See Nat'l Automatic Laundry & Cleaning Council v. Shultz*, 443 F.2d 689, 698 (D.C. Cir. 1971) ("The term 'agency action' thus embraces and agency's interpretation of its law, and it is the finality of that action that we must consider."); *Maine Lobstermen's Ass'n v. Nat'l Marine Fisheries Serv.*, 70 F.4th 582, 597 (D.C. Cir. 2023) ("For 80 years it has been a clear precept of administrative law that an agency action may not stand if the agency has misconceived the law.") (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 94, 63 S.Ct. 454, 87 L.Ed. 626 (1943)).

Under existing authority, including 31 U.S.C. § 1501(a)(5) and the Government Accountability Office's precedent, HGI's Notice of Award is an "obligation" and should have been marked as such. Under 31 U.S.C. § 1501(a)(6), 31 U.S.C. § 1501(a)(9), and the SBA's own procedures, funds in active litigation are "obligated" funds. HGI and the SBA were in active litigation when the CAA was enacted. The SBA's refusal to disperse funds to HGI pursuant to its incorrect interpretation of "obligated" funds in the CAA should be set aside.

### B. Issue Preclusion Does Not Apply to Matters Dismissed for Lack of Subject Matter Jurisdiction.

The SBA claims that issue preclusion prohibits HGI from arguing that the funds at issue were unobligated at the time that the rescission, because this was an issue decided at the Court of Federal Claims. Opposition, at 18. This claim is also entirely without merit. Issue preclusion,

30694609V.1 107227/1424491

also known as collateral estoppel, "applies only to matters that have been actually litigated[.]" *Stebbins v. Keystone Ins. Co.*, 481 F.2d 501, 508 (D.C. Cir. 1973).  HGI's Court of Federal Claims complaint was dismissed for lack of subject matter jurisdiction under the Tucker Act.  *Harlem Globetrotters Int'l, Inc. v. United States*, 168 Fed. Cl. 31, 43 (2023).  It is axiomatic that a dismissal for lack of subject matter jurisdiction contains no preclusive effect.  *See Pailes v. U.S. Peace Corps*, 783 F. Supp. 2d 1, 6 (D.D.C. 2009) ("[T]he Peace Corps' motion based on collateral estoppel fails because dismissal for lack of subject matter jurisdiction has no preclusive effect."); *Filebark v. U.S. Dep't of Transp.,* 468 F.Supp.2d 3, 7–8 (D.D.C. 2006) (denying a motion to dismiss where plaintiff "previously brought a claim against the United States in the Court of Federal Claims ... [which] was not decided on the merits and was dismissed for lack of subject matter jurisdiction under the Tucker Act."); *Stewart v. Geostar Corp.,* 617 F.Supp.2d 532, 537 (E.D. Mich. 2007) (denying defendant's motion to dismiss "to the extent that it relies on collateral estoppel" where the prior state court decision determined that, "as a matter of law, it lacked subject matter jurisdiction")

Instead, this Court should see SBA's argument for what it truly is: an attempt to distract this Court from the unavoidable conclusion that the SBA unreasonably applied the terms of the CAA to HGI's Notice of Award, without sufficient reason or explanation in the Administrative Record.

### C. The SBA Has Provided No Explanation or Authority to Support Its Interpretation of the CAA.

Instead of explaining its interpretation of "unobligated" funds under the CAA, the SBA attempts to dismiss HGI's citations to Court of Federal Claim transcripts, well litigated and fully developed administrative case law authorities, and references to Government handbooks as merely "persuasive" authority.  Opposition, at 20-25.  SBA misses the point.  Post *Loper Bright,* the SBA

10

must affirmatively convince this Court of its interpretation of "obligated" funds under the CAA and it must convince the Court that it had a non-arbitrary and capricious reason for not paying HGI and effectively denying HGI a Notice of Award. *See Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, at 2273, 219 L. Ed. 2d 832 (2024). ("Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires.") HGI has provided numerous, well litigated examples of persuasive authority for the correct interpretation of "obligated". The SBA has provided none.

The SBA's discussion of *Bowsher v. Synar*, 478 U.S. 714 (1986) which the SBA deems as "especially instructive", is puzzling. Opposition, at 23-24. *Bowsher* stands for the proposition that Congressional duties directly delegated to the Comptroller General violate the doctrine of separation of powers. HGI fails to understand the relevancy of this proposition. The authority of the Comptroller General is not at issue here. HGI cites to GAO administrative decisions and the *Principles of Federal Appropriations Law* simply to provide this Court with a reasoned explanation of "obligated" and "unobligated" funds.

Instead of providing any reasonable explanation for its denial, or discussion of "obligation", SBA sits in silence. This is fatal to SBA's position. "The requirement that agency action not be arbitrary and capricious includes a requirement that the agency adequately explain its result." *Jost v. Surface Transp. Bd.*, 194 F.3d 79, 85 (D.C. Cir. 1999) (citation omitted). "Procedurally, a reasoned explanation enables the court to 'discern' the 'path' the agency took. *United States Olympic & Paralympic Museum v. Small Bus. Admin.*, No. 22-CV-3785 (TSC), 2024 WL 3694462, at *3 (D.D.C. Aug. 7, 2024) (citing *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016)). This explanation "is meant to ensure that agencies offer genuine justifications for important decisions." *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2575–76

11

(2019). To meet this requirement, an agency must "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983) (citation omitted).

The reason why the SBA has failed to provide a justification for its interpretation of "obligation" is a simple one: it has already admitted on public record it has none. *See* Transcript of Motion to Dismiss Hearing, 35:9-20, ECF No. 14, *Harlem Globetrotters v. United States*, No. 1:23-cv-00386-RAH (Fed. Cl. October 4, 2023) ("[The Court]: And is that [decision to consider funds obligated] -- is that by virtue or some regulation or some statutory requirement in Title 31 or --[The SBA representative]:  No Your Honor. . . "). The SBA cannot provide any justification for any of its actions – therefore, the SBA's decision to apply the CAA to effectively deny HGI' s Notice of Award is necessarily arbitrary and capricious.

## III.    Under 5 U.S.C. § 706(1), the SBA Should Be Ordered to Disperse Funds Pursuant To A Notice of Award.

HGI relies on 5 U.S.C. § 706(1) for one reason – it remains unclear whether the SBA will ever pay HGI without a direct order.  For the past three years, HGI has been trying to overcome one-sided mistakes made by the SBA.  Compl. ¶67.  HGI promptly applied for SVOG funding, but was incorrectly denied by the SBA.  *Id.*, at ¶3.  After filing suit in this Court, the SBA remitted, and issued a Notice of Award to HGI.  *Id.*, at ¶4.  This Notice of Award was accepted and executed by the SBA.  *Id.*, at ¶5.  Still, HGI has not been paid.  The APA allows this Court to compel agency action when it is "unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).

### A.  The SBA has a Ministerial Duty to Accurately Record Obligations.

The SBA asserts that, as a threshold matter, the SBA must have a "ministerial duty to act" as "Section 706(1) permits judicial review of agency inaction, but only within strict limits."

12

30694609V.1 107227/1424491

Opposition at 4-5.   HGI recognizes that the SVOG statute affords certain discretionary responsibilities to the SBA.  15 U.S. Code § 9009a(b)(2) ("The Administrator may make initial grants to eligible persons or entities.").  However, the matter before the Court is a different one: once a grant is awarded, does the CAA give the SBA the right to incorrectly mark the funds as "unobligated"?  The answer is no.  Accurately marking "obligated" funds is an agency's "ministerial duty."  *See* 31 U.S. Code § 1501 (a)(5)(A)**.**

The CAA rescinds "unobligated" funds from the SVOG program, effective December 29, 2022.  Pub. L. 117–328.  Specifically, the CAA provides that "[o]f the **unobligated** balances of amounts made available under the heading 'Small Business Administration - Shuttered Venue Operators' . . . $459,000,000 **are hereby rescinded**."  *Id.*, at §101(d)(2) (emphasis added).

Next, 31 U.S.C. § 1501 defines how an agency must mark "obligated" funds: **"**[a]n amount **shall** be recorded as an obligation of the United States Government . . . [as] a grant or subsidy payable . . . from appropriations made for payment of, or contributions to, amounts required **to be paid** in specific amounts fixed by law or under formulas prescribed by law." *See* 31 U.S.C. § 1501 (a)(5)(A) (emphasis added)**.**  The SBA agrees that for purposes Section 706(1) the term "shall" indicates a mandatory duty to Act. Opposition at 7; *Arabzada v. Donis*, No. CV 23-655 (RC), 2024 WL 1175802, at *4 (D.D.C. Mar. 19, 2024) ("D.C. Circuit has explained, the term 'shall' is mandatory.")  (internal citations omitted); *Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 671 (D.C. Cir. 2016) (finding that legislation using the word "shall" imposes a mandatory obligation and therefore ministerial duty upon the agency.) [3]

---

[3] Moreover, the addition of the language "to be paid" presents a forward-looking statement. Thus, SBA's interpretation that an obligation only occurs at the time of actual payment is contrary to the plain reading of the statute.

13

Government Accounting Principles agree with the mandatory duty interpretation of 31 U.S. Code § 1501. The "obligational event" for a grant occurs at the time of grant award. *See* GAO, *Principles of Federal Appropriations Law*, at 10-107 ("The [grant award] is when the grantor agency **must** record an obligation under 31 U.S.C. § 1501(a)(5), not when the grantee draws down the funds or when the grantee incurs its own obligations.") (emphasis added). "The statutory **requirement** for recording obligations extends to all actions necessary to constitute a valid obligation, and includes, of course, grant obligations". *Id.,* at 10-14 (citing 31 U.S.C. § 1501) (emphasis added).

The SBA cites to two cases for its position that 31 U.S.C. § 1501 does not "obligate" the government to action: *Rochester Pure Waters Dist. v. EPA*, 960 F.2d 180, 186 (D.C. Cir. 1992) and *Golden Ent. PA, Inc. v. SBA*, Civ. A. No. 22-1731 (JDB), 2024 WL 1344421, at *6 (D.D.C. Mar. 29, 2024). First, *Rochester* only cites to 31 U.S.C. § 1501 to state that the statute can create an affirmative obligation. *Rochester Pure Waters Dist. v. EPA*, 960 F.2d 180, 186 (D.C. Cir. 1992) (finding that pending litigation did not fall under the obligation requirements of 31 U.S.C. § 1501(a)). Second, HGI recognizes *Golden Entertainment* holds that "31 U.S.C. § 1501(a)(5) does not create any requirement that SBA 'obligate' funds after issuing a Notice of Award." *Golden Ent. PA, Inc. v. Small Bus. Admin.*, No. CV 22-1731 (JDB), 2024 WL 1344421, at *6 (D.D.C. Mar. 29, 2024). However, the SBA has already admitted that *Golden Entertainment* is inapposite:

> Last, Harlem Globetrotters tries to distinguish *Golden Entertainment* on various grounds, but that case is inapposite for an even simpler reason. The *Golden Entertainment* plaintiffs did not argue that either 15 U.S.C. § 633 or the Economic Aid Act imposed a ministerial duty on SBA to disburse funds to them. They instead argued only that (1) a different statute, (2) the Notice of Award itself, and (3) various agency guidance documents imposed such a duty—arguments that the court easily rejected. The *Golden Entertainment* court thus had no occasion to address whether either 15 U.S.C. § 633 or the Economic Aid Act impose a ministerial duty on SBA to disburse funds to an applicant.

14

*See* Opposition at 9-10 (internal citations omitted).  Moreover, plaintiffs in *Golden Entertainment* never raised the issue of statutory interpretation of 31 U.S.C. § 1501.  *See* Plaintiff's Memorandum of Points and Authorities in Support of Its Motion for Preliminary Injunction*,* Dkt 12, 2024 WL 1988177 (JDB) (citing only to GAO decisions in support of its definition of "obligation").  This is likely because *Golden Entertainment* was decided before *Loper Bright,* in a time when agency interpretation of statutes under both 706(1) and 706(2) were given significant deference. *See Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, at 2273, 219 L. Ed. 2d 832 (2024). ("*Chevron* is overruled. . . . courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous.")  No such deference exists anymore.  Thus, this Court has never been presented with arguments analyzing the statutory interpretation of  31 U.S.C. § 1501(a).

The complete text of 31 U.S.C. § 1501(a)(5)(A) states: "[a]n **amount shall be recorded as an obligation** of the United States Government **only when** supported by documentary evidence of a grant or subsidy payable from appropriations made for payment of, or contributions to, **amounts required to be paid in specific amounts** fixed by law **or under formulas prescribed** by law."  31 U.S.C. § 1501(a)(5)(A) (emphasis added).

HGI acknowledges that the "only when" language establishes a condition precedent. However, a condition precedent, does not negate the agency's affirmative duty to act.  *Washington Props., Inc. v. Chin, Inc.*, 760 A.2d 546, 549 (D.C. 2000)  (A condition precedent is "an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due.")  Instead, a condition precedent only adds an additional hurdle that must be met before the agency must carry out its duty.  *See W. Sur. Co. v. U.S. Eng'g Co.*, 375 F. Supp. 3d 1, 5 (D.D.C. 2019) ("In other words, a condition precedent is a fact which must either occur or

30694609V.1 107227/1424491

exist before a duty to perform can arise.")  The Economic Aid Act satisfies this condition precedent – it undisputedly prescribes a "formula" for distribution of funds.  *See* 15 U.S. Code § 9009a(c) ("Amount. . . Subject to subparagraphs (B) and (C), a grant under subsection (b)(2) shall be in the amount equal to the lesser of . . .")  Therefore it follows, that an agency must "record as an obligation" the granted amount.  31 U.S.C. § 1501(a)(5)(A).

There are numerous GAO cases confirming this interpretation of 31 U.S.C. § 1501(a). They are summarized in *Corporation for National and Community*:

> [T]he nature or scope of the obligation [is] incurred at time of [grant] award. Were it otherwise, every government contract that permits the government to terminate the contract for the convenience of the government (48 C.F.R. § 49.502), or to modify the terms of the contract at will (48 C.F.R. §§ 52.243-1, 243-2, 243-3), would not be an obligation of the government at time of award. Long-standing practice and logic **both of the Congress (31 U.S.C. § 1501, 41 U.S.C. § 5) and the accounting officers of the government** (B-234957, July 10, 1989, B-112131, Feb. 1, 1956) have rejected such a view. As we explained earlier, at the time of grant award, the Corporation's approval of a specified number of new participants establishes a legal duty that can mature into a legal liability for education benefits by virtue of actions of the grantee that are beyond the control of the Corporation unless the Corporation takes affirmative action to modify the grant.

*Obligational Practices of the Corporation for National and Community*, B-300480, 2003 WL 1857402, (Comp. Gen. April 9, 2003).  This Court need not reinvent the wheel.  Numerous, well-litigated GAO cases have held that 31 U.S.C. § 1501 requires agencies to mark as obligated funds after issuance of a Notice of Award. *See*, e.g.,  *U.S. Department of Education's Use of Fiscal Year Appropriations to Award Multiple Year Grants,* B-28980, 2002 WL 31950147(Comp. Gen. Dec. 30, 2002) ("In the grant context, the obligation occurs at the time of award.") (citing 31 U.S.C. § 1501(a)(5)).; *Appropriations, Obligation, Civil Defense Contributions to States* B-109173, 1952 WL 588 (Comp. Gen. May 21, 1952) (finding that a grant constitutes "a binding obligation upon the United States" for purposes of Appropriation Acts.)

The SBA responds in two ways.  First, it implies that 31 U.S.C. § 1501(a)(5)(A) does not apply to discretionary funding.  Obviously, that cannot be the case: the CAA explictly rescinded "unobligated funds" from SVOG funding.  Pub. L. 117–328., at §101(d)(2).  Clearly, SVOG fundings become "obligated" at some point.  After all, the CAA's rescission of all "unobligated" funds from the SVOG program necessarily implies the existence and non-recission of "obligated funds."  These two terms can only exist in a binary. *See Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393 (2003) (finding that if a word is not statutorily defined, then the courts are bound to start with the common law meaning of the term.)

Second, the SBA argues that an executed Notice of Award is not an obligation under 31 U.S.C. § 1501(a)(5)(A).    Under the SBA's reading of 31 U.S.C. § 1501(a)(5), the term "obligation" is affixed to some amorphous point, likely at the actual disbursement of funds.  But that is not what 31 U.S.C. § 1501(a)(5) calls for.  Instead, an executed Notice of Award presents specific amounts to be paid, attached with specific conditions, under a formula prescribed by 15 U.S. Code § 9009a.  *See Corporation for National and Community*, B-300480 ("When the [agency] enters into grant agreements with state service commissions, it specifies the budget and project period of the award, the total number of positions approved, the total amount awarded for related program costs for the approved positions, and the terms of acceptance.")  HGI has provided numerous authorities to support this reading of 31 U.S.C. § 1501(a)(5).  *See* Motion at 17-20 (detailing the numerous GAO decisions concluding that the date of the Notice of an Award is the date of an obligation for purposes of 31 U.S.C. § 1501).  The SBA has provided no authority – precedential or persuasive – analyzing the text of 31 U.S.C. § 1501.

Perhaps the most damning piece of evidence against the SBA's position is its own affidavit.  Surprisingly, Ms. Richardson's testimony admits that because of SBA's own record keeping

17

practices, "there is now a $4,671,078 gap that SBA owes to the U.S. Treasury." *See* Opposition, Exhibit A  Richards Decl. ¶ 10.  This deficit occurred because SBA reported to Congress it had $459 million of unobligated funds, when it only had $454,328,922 in remaining funds. *Id.,* at ¶¶9-10.  These poor record keeping practices resulted in the exact outcome GAO cases warn against. *Obligational Practices of the Corporation for National and Community*, B-300480, 2003 WL 1857402, (Comp. Gen. April 9, 2003) ("Understanding the concept of an obligation and properly recording obligations are important because an obligation serves as the basis for the scheme of funds control that Congress envisioned when it enacted such fiscal laws as the Antideficiency Act.")  By not accurately marking the funds as "obligated" at the time of the Notice of Award, the SBA acknowledges that it does not "understand[] the concept of an obligation and properly recording obligations." *Id.*

And contrary to the SBA's assertions, just because the SBA does not have the money to pay HGI, does not mean it is "off the hook" for payment. *Maine Cmty. Health Options v. United States*, 590 U.S. 296, 308, 140 S. Ct. 1308, 1319 (2020) ("Incurring an obligation, of course, is different from paying one.")  *Maine Cmty*, describes the four-steps required to create **and** satisfy a Government obligation:

> Creating and satisfying a Government obligation, therefore, typically involves four steps: (1) Congress passes an organic statute (like the Affordable Care Act) that creates a program, agency, or function; (2) Congress passes an Act authorizing appropriations; (3) Congress enacts the appropriation, granting "budget authority" to incur obligations and make payments, and designating the funds to be drawn; and (4) the relevant Government entity begins incurring the obligation.

*Maine Cmty. Health Options v. United States*, 590 U.S. 296, 308, 140 S. Ct. 1308, 1319 (2020) (citing GAO, Principles of Federal App. Law, and *Op. Comp. Gen.*, B–193573 (Dec. 19, 1979)).[4]

---

[4] *Maine Cmty* - finding that Congress can "deviate from the [four-step] pattern" - ultimately analyzed the text of the Affordable Care Act. *Id.*  Here, there is no need to apply a different test

30694609V.1 107227/1424491

Preliminarily, it should be noted that in support of its position, the Supreme Court cites almost exclusively to Comptroller General Decisions and the GAO's Principles of Federal Appropriations Law – thus even the Supreme Court recognizes the GAO's expertise in analyzing appropriations statutes.  Moreover, there can be no question that the Government has satisfied all four requirements to create and satisfy an "obligation" for purposes of 31 U.S. Code § 1501: 1) Congress passed 15 U.S.C. § 633 creating the SBA to administer small business grants, 2) Congress passed the Economic Aid Act authorizing appropriations; 3) Congress enacted the SVOG statue granting "budget authority" to the SBA: and 4) the SBA began incurring obligations under 31 U.S.C. § 1501 by issuing Notices of Award.  *Id*.  Under any rational interpretation of 31 U.S.C. § 1501, the SBA has a ministerial duty to accurately record HGI's Notice of Award as an "obligation".  *See Wilbur v. U.S. ex rel. Kadrie*, 281 U.S. 206, 218–19, 50 S. Ct. 320, 324, 74 L. Ed. 809 (1930) ("Where the duty in a particular situation is so plainly prescribed as to be free from doubt and equivalent to a positive command, it is regarded as being so far ministerial that its performance may be compelled by mandamus, unless there be provision or implication to the contrary.")  Therefore, this Court has the authority to order the SBA to fulfill that ministerial duty and pay HGI $10,000,000.

**B.  706(1) is Appropriate to Prevent the Frustration of Judicial Orders.**

Finally, the SBA argues that Congress intended for the APA to not always provide an actionable relief.  Opposition at 9.  This misses the point of HGI's argument.  HGI asserts that under the SBA's interpretation, remedies available under Section 706(2) for discretionary grants are meaningless. If a statute is deemed discretionary (and almost all grant statutes are), anytime a

---

because under the four-step analysis, an obligation has been created against the Government which must be satisfied.

30694609V.1 107227/1424491

court orders a Notice of Award to be set aside pursuant to Section 706(2), the agency can simply refuse to take further action. The practical effect of any claim for grant relief under 5 U.S.C. § 706(2) to revisit a denial of a Notice of Award will be lost. In fact, this Court will be setting the precedent that for most grants, it will be futile to bring a 5 U.S.C. § 706(2) to challenge a denial of Notice of Award, because issuance of the Notice of Award will not necessarily lead to payment of funds.

This Court is clear that it has the authority to issue a writ of mandamus to "prevent the frustration of orders previously issued." *Potomac Elec. Power Co. v. ICC ("PEPCO"),* 702 F.2d 1026, 1032 (D.C. Cir. 1983); *see also In re Core Commc'ns, Inc.,* 531 F.3d 849, 856 (D.C. Cir. 2008) ("[U]ntil the FCC states its explanation for its interim rules in a final order, Core cannot mount a challenge to those rules. In this way, the FCC insulates its nullification of our decision from further review. But a federal court has authority to issue a writ of mandamus to prevent the frustration of orders previously issued.") (internal citations omitted).

HGI points to any number of SVOG cases decided either partially or fully in favor of the plaintiff after the passage of the CAA. *See, e.g., Concert Inv., LLC v. Small Bus. Admin.,* 100 F.4th 215 (D.C. Cir. 2024); *United States Olympic & Paralympic Museum v. Small Bus. Admin.*, No. 22-CV-3785 (TSC), 2024 WL 3694462(D.D.C. Aug. 7, 2024). If relief cannot be granted because of the CAA, these cases would be moot. In response, SBA claims that HGI has a "strained attempt to find meaning" behind the text of *Concert Inv., LLC v. Small Bus. Admin.,* 100 F.4th 215 (D.C. Cir. 2024) and similar cases. Opposition*,* at 9. Unfortunately for the SBA, this Court has already disagreed with the SBA's position. *See Vallejo Ent. LLC v. Small Bus. Admin*., No. 1:22-CV-01548-RCL, 2023 WL 3275634, at *2 (D.D.C. May 5, 2023) ("*Concert Investor* will almost assuredly answer a key question potentially dispositive in this case: whether congressional

20

rescission of unobligated funds from the Shuttered Venue Operators Grant (SVOG) Program prevents courts from providing relief."). By finding for the plaintiff, *Concert Investor* implicitly answered the question posed in *Vallejo*. If the SVOG prevented this Court from providing relief *Concert Investor*, it would not have partially found in favor of the plaintiff – there would be no reason to. This Court's holdings in those cases point in one direction: Congressional rescission of unobligated funds from the SVOG Program does not prevent this Court from providing relief.

It remains unclear whether the SBA will ever pay HGI without a direct order, even if it has remaining SVOG funds. Under the SBA's interpretation of the SVOG statute, the SBA can sit on SVOG funds granted to it without ever administering any funds. This cannot be how a government functions. The APA allows this Court to compel agency action when it is "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The SBA should be ordered to pay $10,000,000 and fulfill its obligations under a valid Notice of Award.

## IV. **HGI is Entitled to Promissory Estoppel.**

### A. Promissory Estoppel Claims Can Be Levied Against the Government.

The SBA claims that sovereign immunity bars all promissory estoppel cases against the government. In support of this claim, the SBA primarily relies on *Olympic Fed. Sav. & Loan Ass'n v. Off. of Thrift Supervision*, Civ. A. No. 90-0482 (RCL), 1990 WL 134841(D.D.C. Sept. 6, 1990). *See* Opposition at 27-28.

The SBA's reliance on *Olympic* is misplaced for two reasons. First, *Olympic* is an unpublished opinion that should not be given precedential effect. *See Nat'l Classification Comm. v. United States*, 765 F.2d 164, 170 (D.C. Cir. 1985) ("[U]npublished opinion ... has no precedential effect with respect to other parties."). Moreover, *Olympic* clearly discusses promissory estoppel brough under the authority of the Tucker Act. *Id.* ("[T]he Tucker Act did not waive immunity as to promissory estoppel claims.") While the Tucker Act was at issue in HGI's

21

case at the Court of Federal Claims, it is not at issue in this case.  Instead, this Court has indicated that promissory estoppel can be levied against the government.  *See e.g. Donovan v. USPS*, 530 F.Supp. 872, 892–94 (D.D.C. 1981) (resolving promissory estoppel claim against USPS on its merits);  *Beckman v. USPS,* 79 F.Supp.2d 394, 406 n. 15 (S.D.N.Y.2000) ("[T]here is nothing to prevent this Court from hearing a claim of promissory estoppel against the USPS*,* provided there is some basis for jurisdiction and the claim is properly pleaded.")

In this Court, "immunity questions often turn on whether the activity is discretionary, or ministerial."  *Burkhart v. WMATA*, 112 F.3d 1207, 1216 (D.C. Cir. 1997) (internal citations omitted).  *Monument Realty* explains the relevant test:

> Under certain conditions, liability for discretionary actions is shielded by sovereign immunity, **whereas sovereign immunity never shields ministerial actions**. The distinction between "discretionary" and "ministerial" is as follows: "Generally speaking, a duty is discretionary if it involves judgment, planning, or policy decisions. It is not discretionary [i.e., ministerial] if it involves enforcement or administration of a mandatory duty at the operational level, even if professional expert evaluation is required.

*Monument Realty LLC v. Washington Metro. Area Transit Auth.*, 535 F. Supp. 2d 60, 76 (D.D.C. 2008) (emphasis added).  As discussed in Section IIIA, the SBA has a ministerial duty to obligate funds pursuant to an awarded grant.  Thus, sovereign immunity does not bar HGI from alleging promissory estoppel claims.

### B.  HGI Adequately Established the Elements of Promissory Estoppel.

To demonstrate promissory estoppel, a plaintiff must establish three elements: (1) the existence of a promise; (2) that the promise reasonably induced reliance on it; and (3) that the promisee relied on the promise to his detriment. *In re U.S. Office Products Co. Sec. Litig.,* 251 F. Supp. 2d 77, 97 (D.D.C. 2003).

SBA primarily contends that the Notice of Award and surrounding documentation is not a "promise."  However, a "promise is an expression of intention that the promisor will conduct

30694609V.1 107227/1424491

himself in a specified way or bring about a specified result in the future, communicated in such a manner to a promise that he may justly expect performance and may reasonably rely thereon." *Choate v. TRW, Inc.,* 14 F.3d 74, 77–78 (D.C. Cir. 1994)*.* The execution of the Notice of Award and surrounding communications (including a voicemail from SBA's representative) satisfies this element.

Throughout the SVOG process, the SBA solicited offers through grant applications, set up a website and SVOG Portal to receive and approve such applications, and published SVOG Guidelines and other policy documents concerning the administration of SVOG grants, including unambiguous instructions regarding the SBA's acceptance of applicant offers. 15 U.S.C. § 9009a(b)(1)(A); SVOG Notice, 86 Fed. Reg. 16,270; SVOG Guidance (Ver. 1); SVOG Guidance (Ver. 4). And pursuant to the governing procedure established by Section 9009a, its accompanying regulations, and the SBA's official communications with HGI, grant agreements were accepted by issuing award notices—specifically Form 1222 Notice of Award—to approved applicants. *See* SVOG Notice, 86 Fed. Reg. at 16,274 (providing that the SBA will notify successful applicants "via electronic correspondence containing a link to access an electronic version of a grant award notification"); SVOG Guidance (Ver. 1) at 1, 3–4 (providing that "after approval" the SBA would send a "Notice of Award (Form 1222)" and that the applicant's "application has been approved" and the "award amount is finalized"). Clearly, SBA communicated that it intended to provide money to SVOG recipients.

In support of its position, the SBA cites to HGI's Court of Federal Claims case to suggest that the Notice of Award was not a "promise." Opposition at 30. However, that was not at issue in the Court of Federal Claims. *Harlem Globetrotters Int'l, Inc. v. United States*, 168 Fed. Cl. 31, 43 (2023). Instead, the Court of Federal Claims held that the Notice of Award by itself did not

30694609V.1 107227/1424491

satisfy the requirements to be a binding contract for purposes of the Tucker Act. *Id.* Again, the Tucker Act is not at issue in the instant matter.

Jurisprudence in this Circuit is clear that oral communications supported by documentation can serve as the basis for a promissory estoppel claim. *See Parnigoni v. St. Columba's Nursery Sch.*, 681 F. Supp. 2d 1, 26 (D.D.C. 2010) (holding an oral promise of employment for a term can constitute as a definite promise for a promissory estoppel claim). By all accounts, HGI was told it would receive the funding both through the SBA website, the Notice of Award, and verbal confirmation. However, no funding ever came.

SBA also claims that HGI did "not even argue it satisfies the second element of a promissory estoppel claim—that SBA 'expected [it] to rely on the promise by taking definite and substantial action or forbearing from such action.'" Opposition at 32. Again, this is simply untrue. The Motion for Summary Judgment states that "[o]n reliance of SBA's Notice of Award and verbal confirmation, HGI began its tour for the upcoming season. Singleton Declaration, ¶7. At this time, no reasonable person would think that the SBA would claim that the not yet enacted CAA would rescind promised funds." Motion at 32. HGI's application and supplemental information informed SBA of HGI's potential upcoming tour. Administrative Record ("AR") 0001-0654. Moreover, one of the conditions to receive the Notice of Award was continued confirmation with the SVOG statute. AR 1915-1917.

The SBA promised HGI money and HGI anticipated using the awarded $10 million for payroll costs, rent payments, utility payments, and debt payments. HGI suffered injuries due to its reliance on the Defendants' promise and therefore should be awarded at least $10 million in promissory estoppel.

24

## CONCLUSION

For the foregoing reasons, HGI respectfully requests that the Court grant HGI's Motion for Summary Judgment and Deny SBA's Cross Motion for Summary Judgment.

Respectfully submitted this 2nd day of December, 2024.

/s/ Gunjan Talati
Gunjan Talati (DC Bar No. 976169)
KILPATRICK TOWNSEND & STOCKTON LLP
701 Pennsylvania Ave, Suite 200
Washington, DC 20004
gtalati@ktslaw.com
Telephone: (202) 481-9941
*Attorney for Plaintiff*

25

30694609V.1 107227/1424491